DAVIS, Senior Circuit Judge,
concurring in part and dissenting in part:
“[N]on-attorney parents generally may not litigate the claims of their minor children in federal court.” Myers v. Loudoun County Public Schools, 418 F.3d 395, 401 (4th Cir.2005). As counsel for the school board aptly conceded at oral argument, Myers instructs this Court to apply the non-attorney parent litigation rule to this entire case and remand it to the district court. Yet instead, the majority states that it is “comfortable,” maj. op. at 200, carving the case in half by applying Myers’ non-attorney parent litigation rule to M.D.’s Title IX claim but not to his Title VI claim. I can discern no basis in law, fact, or logic for that distinction. Accordingly, although I concur in the vacatur and *205 remand of the Title IX claim, I am constrained to dissent from the affirmance of the dismissal of the Title VI claim.
The majority offers two reasons for distinguishing between the Title VI and Title IX claims for purposes of the non-attorney parent litigation rule: first, it states that the former claim “turns on a pure question of law mitigating any risk of prejudice [to M.DJ,” maj. op. at 203, and therefore falls into an exception to the Myers rule; second, it states that, as a matter of law, M.D. cannot meet the intent requirement of Title VI “by challenging only the timeliness and adequacy of the administrators’ response because the alleged use of racial epithets began just weeks before M.D.’s withdrawal from Summer Hill,” maj. op. at 203.
Each of the proffered reasons puzzles me.
With respect to whether our resolution of the Title VI claim turns on a question of law, the majority’s argument conveniently ignores that the Title IX claim also turns on a pure question of law: whether Title IX permits sex-stereotyping claims when the victim and harasser are both of the same sex. The district court answered “no,” ruling that such harassment constitutes sexual orientation discrimination and therefore is not actionable under Title IX. M.D. appealed, arguing that his claim fits under Title IX’s prohibition on sex discrimination on a gender stereotyping theory. If anything, the Title IX issue is a more neatly-presented question of law for our resolution. All of us agree that under the rule of Myers, the district court should not have resolved that issue in the absence of counsel for the minor plaintiff. Manifestly, that is a correct analysis.
The majority’s second proffered reason is even more puzzling: it states that there is no set of facts that M.D. could plead that would satisfy the intent requirement of Title VI, and to make its point it focuses on the amount of time that the school board had to respond to M.D.’s victimization on the basis of racialized bullying.
Even if we could permissibly decide this case on the basis of a complaint filed by a non-attorney parent (which we cannot under Myers), this argument is refuted by the allegations in the prolix complaint in the record. Specifically, the majority states that only a few weeks passed between M.D.’s parents’ report of the bullying to the school and M.D.’s withdrawal from the school, but that assertion is expressly contradicted in the complaint: “[f]rom February of 2013 to April of 2013, the Plaintiffs’ mother and father” visited the school to state their concerns about the racialized bullying of M.D. J.A. 6 (emphasis added). In other words, construing the complaint — as we must — in the light most favorable to M.D. (if we are going to “construe” it at all), there were months of inactivity by the school board in the face of these allegations of racialized bullying. The majority’s parsing of the complaint to select a timeline of events justifying affir-mance of the district court is in vain and demonstrates exactly why we should not decide appeals from the grant of Rule 12(b)(6) motions dismissing complaints filed by non-attorney parents.
Nor is it likely that the majority’s argument enjoys any substantial foundation in law. The majority opinion codifies as law the belief that no jury may find a school board liable under Title VI for failing to act for weeks after a six-year old and his parents reported that he was repeatedly called a “nigger” and a “little monkey.” J.A. 5. Besides being a startling new rule of antidiscrimination law, the majority’s holding flatly contradicts our prior case law: given that the use of these racial epithets has been held to radically change the dynamics of even an adult workplace *206 environment, Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir.2001), it seems quite fantastic to hold that the same epithets used against a highly impressionable six-year old boy at school (where he has no easy way of evading his harassers) cannot ever give rise to liability against school administrators for their failure to act for weeks. I would be troubled by this holding in any other case, see Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1033 (9th Cir.1998) (holding that school districts may be held liable under Title VI for deliberate indifference to student-on-student racial harassment); I am disturbed that we embrace it in this improperly pled case brought by a non-attorney parent.
Lacking a foundation in fact or law, the majority’s opinion is left begging the question posed by the non-attorney parent litigation rule. The rule is child-protective: it prevents well-intentioned but legally inept parents from endangering the interests of their minor children. Myers, 418 F.3d at 401. Such danger can arise as readily from an inartfully pled complaint as it might from the service of garbled interrogatory responses, a fumbling cross-examination at trial, or an incoherent closing argument. If M.D.’s interests were prejudiced as to one count because of poor pleading or inadequate parental representation or “potentially prejudicial confusion,” maj. op. at 203, then his right not to be similarly prejudiced as to the other count in the same complaint should obtain as well.*
No litigant has asked us to recognize the distinction embraced by the majority; the district court did not make that distinction, or even pay heed to its duty, unmistakably imposed by Myers, to decline to adjudicate the claims at all in the absence of counsel for the minor plaintiff. Indeed, the answer is that there is no cognizable distinction. Myers must apply with equal force to both counts. Accordingly, I respectfully dissent from so much of the majority opinion as affirms any portion of the judgment.

 Albeit only implicitly, concerns over judicial integrity and public confidence in the adversarial process also undergird the rule of Myers, for it is a truism that
Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions-all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.... [I]t is important to reaffirm ... the principle that lawyers, who serve as officers of the court, have the first line task of assuring the integrity of the process.
United States v. Shaffer Equipment Co., 11 F.3d 450, 457 (4th Cir.1993).